Thank you. And good morning, Your Honors. My name is Colin McBeth. I represent the appellant Thomas Combs. In this case, Your Honors, there was a breakdown in the adversarial process. District courts are supposed to act as neutral, compassionate arbiters who decide disputes based on a factual record developed by the parties. But here, the district court took its own evidence outside Mr. Combs' presence and without giving him advance notice, and it acted as a de facto victim advocate on behalf of his ex-wife. On these highly unusual and troubling facts, a remand for resentencing is required. Mr. McBeth, can I ask you, I mean, there's, it seems to me there were two breakdowns in the adversarial process. So assume for the sake of argument, I agree with you that this was a violation of the Federals of Criminal Procedure. There was also a violation of the claim presentation rules that say when you think a district court judge has made a mistake, it's your job to point out that you think a district court judge has made a mistake. Could you, and I'll just, so I guess I'll just confess to you, at least my inclination is that you're probably right on the error question, but I'm troubled about whether you're right on the clear or obvious error question. So could you, I guess, talk me through that? Not just why is, not just why was it wrong to do this, but why was it clearly and obviously wrong to do this? Sure, Your Honor. So there are a couple things I can point to to demonstrate the plainness of the error. So start first just with the plain text of the rule. The rule says that at a revocation hearing, a releasee is entitled to various rights. The rule does not, on its face, by its language, distinguish between the so-called guilt phase and sentencing phase of a revocation hearing. It says these are the rights you get at a hearing. The commentary also makes clear that a revocation hearing encompasses both guilt and sentencing. It says that the court shall hold a revocation hearing at which it shall determine guilt and sentence. We also have the 2005 amendment to the rule, which added 32.1b2e, which gave releasees the right to allocute at a revocation hearing. An allocution, I think everyone agrees, is undeniably a sentencing right. So if the rights in Rule 32.1b2 include sentencing rights, and the text of the rule does not distinguish between the two stages, it's logical that the rights apply at both stages. And then, in addition, we have the fact that Rule 32.1 was meant to codify the protections from Morrissey. And if you look at Morrissey, it also uses the phrase revocation hearing and revocation decision, and it's clear, it says that revocation hearing encompasses two distinct questions. First is the factual question, did the parolee commit a violation? And the second is, if he did, should the parole board revoke parole and send the prisoner back to prison? And then, crucially, it also says that the need for procedures guaranteeing accuracy extends to both of those phases. It's not important just to have accurate fact-finding at the first stage, but also at the second stage. So what do you say to the government's argument, again, positing that you're right, but the question is still whether you're clearly obviously right, that it is a little bit odd, maybe, to say that the evidentiary rules at a revocation hearing are more strict than they are at an initial criminal sentencing? That one of the government's arguments is that that seems a little odd. Could you address that? So two points. First is, even if that's true, which for the reasons I'll say in a second I don't think it is, the rule says what it says. The plaintext of the rule says these are the rights you get at a revocation hearing, and it does not say only certain rights at certain parts. So if the court is going to apply the plaintext of the rule, that's the result. But if the court wants to give that a coherence or a logic, I think part of the reason is that in the real world, as a practical matter, at supervised release revocation proceedings, often guilt is not really in doubt. I mean, at least in my experience, it seems like many, many releasees stipulate, as Mr. Combs did in his case. They test positive for drugs. They're arrested for some other offense. Right. Or, you know, the probation officer says he didn't show up to the meeting. There's just really nothing to talk about with the guilt case. That's not true in every case. I'm not saying every case, but in my experience in most cases. The real action is at the second stage where the question is, okay, so what do we do now that we have found a violation? Does this actually warrant sending you back to prison, or are there steps we can take short of that that would not result in re-imprisonment? And so it's really important at that step that we have these procedures to guarantee accuracy. And Morrissey, I mean, Morrissey talks about the reason we have to have these protections is that liberty is at stake. That is why there is a due process right, because liberty is at stake. And again, liberty really is decided at that second part. But just to confirm, you haven't pursued, forfeited or not, a freestanding due process claim. The only claim you're making is based on the rule. That's correct, Your Honor. And my understanding from this court's case is that due process and Rule 32.1 are essentially co-extensive. I don't think there's much, if any, daylight between the two. So I think we are only making a rule-based argument, but it really is the same thing as a due process-based argument. So, in addition to that, as to why we have more protection at a sentencing stage, you know, I think a revocation hearing is very different from a trial in the sense that if you're convicted of a crime, even if you don't go to prison, that can be a devastating event in your life. You lose your right to vote, to serve on juries, to receive certain federal benefits, et cetera. In the revocation context, the finding of a violation by itself is really just not that important. I mean, from the releasee's point of view, what matters is not did the court find that I shouldn't show up for a drug test, but am I going to go to prison because of that? That's what really matters. And so I think, you know, again, to the extent the court wants to explain why the rule would provide these protections at both stages, that's the reason, is that this is different from a trial or a plea because the consequences are different for the person involved. Look, counsel, let's say, if you get, we agree with you or we assume that you established error and that it was plain, the third prong under the plain error view, I'd like to talk about that a little bit. It looks like from the transcript there's, if we're talking about the call and any reference to the call to the chambers, it's maybe four lines, maybe seven lines in a 35-page transcript where the district court talks on and on about the How is that two or three lines, four to seven lines prejudicial or not harmless in the context of everything else that is discussed by the district court? Sure, so a couple of points, Your Honor. First is the overall transcript is about 35 pages, but part of the transcript where the court is explaining its sentence is only about four pages, that's JA 251 to 254, and during those four pages the court is actually engaged in a colloquy with Mr. Combs. So if you take out the parts where Mr. Combs is speaking, it's really more like two and a half to three pages. So the court is not saying a whole lot. It does mention the call. It doesn't mention the March 2020 letter or anything else about specifics of why the court thinks Mr. Combs is violent. It refers to this call. And it also talks about how the court needs to protect the public and Mr. Combs' mental health issues, but crucially in the district court's mind, mental health and substance abuse issues are linked to the violence. The court says at several places, the reason that you're committing these acts of violence is that you have these mental health issues. And so it's not, I don't think you can so neatly disaggregate the fact that the court is focusing on mental health from violence and the threats. I mean, the court says, for instance, on JA 252, it says, but your mental health issues have endangered people. In other words, the reason I care about your mental health issues in this context is that they're making you do and say violent things. Or then on JA 253, the court says, I have a job to protect the public, not only in terms of, but also in terms of danger to the public, threat to the public, and it's all been predicated upon whether you are or are not handling your mental health issues. So it's true that the call itself is only about four lines, but it's infused into the rest of the district court's explanation. Could you help me understand? I'm trying to articulate precisely what is the question we're asking under substantial rights. I mean, it requires us to ask some counterfactual question, but could you help, how would you articulate what the counterfactual question we're supposed to be asking is at the prejudice stage? Thank you, Your Honor, and this is important because it can be tricky in this case. So the factual question or counterfactual question is, assume that the evidence should not have come in. Assume the evidence should have been excluded, and that at an alternative sentencing, that evidence was not before the court. I thought you might say that, and I mean, that's possible, but let me, I mean, I'm sure you've thought about this. I mean, another possible counterfactual question is, assuming the district court had properly disclosed this information, what is the Those seem like equally, in some ways, equally plausible counterfactual questions because after all, under Rule 3, even under your interpretation of the rule, at least under your interpretation of the notice part of the rule, he didn't have any right to not have the evidence considered. He had a right to know that the evidence was going to be considered. So why, now I understand your argument on the hearsay point, maybe that's different, but at least on the notice argument, why isn't the counterfactual question, had he been notified, would the result have been different? Well, I think it's, the reason is the same reason that, in the hearsay context, the court doesn't ask, well, how would the cross-examination have gone if he'd had a chance to cross-examine? And the answer is, it's just impossible to know after the fact how someone who's never seen this evidence, including to this day, Mr. Clemson has still not heard any details about these calls. It's impossible to know or to show how he would have responded to that, and the Sixth Circuit made this point in the Hayes case. The government in that case argued, well, Mr. Hayes should have to show how he would have responded to these victim impact letters if he had been told about them ahead of time. And the Sixth Circuit said, there's no way he can do that. Was Hayes a case involving a forfeited error or a preserved error? Because, I mean, I think everything you're saying makes total sense to me in the context of a preserved error, right? But when I hear you just say what you're saying, there's a lot of sense to it, but it sounds like a structural error argument, like this is the sort of error that's just impossible to know how it would, you know, right? Which makes total sense to me in the But I get the sense the Supreme Court has said that when we're dealing with forfeited errors, we really don't do structural error analysis. I mean, Cotton says that I mean, you know these cases, right? My sense is that the Supreme Court has repeatedly told the lower courts, we don't do structural error analysis for forfeited errors. That's true, Your Honor, and I'm not arguing it's structural. Well, but when you say it's impossible to know, so we have to presume it was bad, that to me sounds like structural error. I'm not saying there's a presumption, I'm just saying the standard can't be that we have to come in and point to evidence that we have still never seen and say, here's how we would have responded to it. I mean, if that is the standard, then it will be literally impossible to show prejudice in a case like this. And, you know, I understand plain error is a hard standard to satisfy, but it's not supposed to be impossible. There's supposed to be a way to show it. And in fact, in the, I believe it was the Hamilton case, which is unpublished, but this court's case, the court found plain error, found all four prongs satisfied and reversed even though it was forfeited and, you know, the defendant couldn't show exactly how he would have cross-examined or fought the evidence if he'd had the chance. So, okay, so in addition to the, turning back to the merits of the substantive rights thing, I mean, there were a lot of reasons to revoke this gentleman's supervised release. I mean, I think the district court goes through them, right, but this has been a long, continuing course, and I could easily see the district court imposing exactly given all of the reasons to do it. I think it's pretty clear that the district court would have had plenty of reasons to do the exact same thing if the phone call had never happened. So how should we analyze that, what seems to me fairly obvious fact, that this is not a case, I mean, I agree, the district court mentions the call and that's troubling and seems like a problem, but it's also pretty clear the district court may well have reached the exact same result even without the call. So, perhaps it would have. I obviously can't tell you for certain that it wouldn't have, but the question is not, you know, is this 37 month sentence substantively reasonable? In other words, is it supported by all the properly evidenced evidence? The question is, would this particular court in this particular case actually have imposed the same sentence if the evidence had not been there? And I think, you know, we have reasons to believe the court attached a lot of significance to these calls, not only the fact that the court mentioned them at the hearing, but also when the court got the call, it took the really, rather extraordinary step of contacting the U.S. Marshal Service on behalf of Ms. Dancy finding out whether there was a detainer and then presumably reporting back to her and telling her, don't worry, the man I'm about to sentence can't harm you. I mean, that's a really, really unusual thing for the court to do, at least I think it is. I don't think the court would have done that unless it found the calls quite troubling. And, you know, again, I mentioned in the brief, the reasonable probability standard is at least, you know, that prong is actually not super demanding. It's a lower standard than, more likely than not. Not even a 50% chance. You just have to show it undermines confidence in the outcome. And I think when a court is, again, taking these steps outside the courtroom on behalf of a victim based on a call like this, we can at least have some doubt, not be confident that the sentence would have been the same. Especially, again, because this was a 37-month sentence. The previous two sentences were zero months and two months. And to be sure, there were, you know, new aggravating facts here. But we don't have to show that the entire sentence, the entire increase in the sentence was based on this call. We just have to show that one month or even just one day of the sentence was the result of the fact that the court considered these calls. And I think, you know, given, again, the fact that the court mentioned the call twice, gave a short explanation of its sentence, and took these extraordinary steps, I think that's, at least, you know, there's a reasonable probability that that would have been the case. And as for the plain, to go back to your question about the plain error, you know, it is true that this court has never explicitly raised and rejected the argument that Rule 32.1 does not apply at the sentencing phase. But all the courts' cases that I'm aware of assume that that's the case. And I think the reason they assume that that's the case is that the rule just doesn't give any indication that it doesn't apply at sentencing. I see you're running out of time on your initial argument. I guess, if we're going to go back to plainness, one question is, what would you have us say about Ruby? So, that's one. Sure. So, Ruby, to be candid, is an outlier. And, you know, it is one case. This court's cases have taken the opposite route. Again, without being explicit, they have done that. Ruby also mentions the Third Circuit's opinion in Lloyd, which is much like this court's opinion in Ferguson. It reverses and remands for new sentencing because the error was not harmless. Again, Lloyd did not explicitly reject the alternative interpretation, but it's consistent with our view. The government cites the First Circuit's case in Cologne-Maldonado. And if you look at that case, there's a footnote saying that in the previous case, the United States bedoused. The First Circuit said that Rule 32.1 applies at both stages. And then, in Cologne-Maldonado, the court has a footnote saying, well, arguably, that was dicta. So, fair enough, I'm not saying it's binding, but the point is, that's the logical interpretation that pretty much everyone except the Tenth Circuit seems to be coming to. And again, the plain language of the rule says it applies at both steps. So, unless the President has any more questions, I will stop for now and save my time for rebuttal. Thank you. Good morning, Your Honors. This is U.S. Attorney Matt Phelps on behalf of the United States. I just want to jump in and say I disagree that Ruby's an outlier. Ruby is the only appellate decision that addressed whether 32.b.2.c applies to sentencing. It's the only opinion. I don't think it's an outlier. I think it's, in fact, the only opinion on point. I do want to also make one... But what do you say about your friend on the other side's argument that there are all kinds of decisions that just seem to assume that that's obviously wrong? Your Honor, I don't think that that's the case. For example, if you look at the decisions, they tend to be centered on subsection b.2.e, related to allocution, which does apply to sentencing. And if you look at Morrissey and you look at, for example, where b.2.c shows up in Morrissey and you look where b.2.e shows up in Morrissey, one looks like a trial right and one looks like a sentencing right. If you look at Morrissey, when the Supreme Court laid out its due process protections, it did it in the course of a hypothetical parole violation. It did it sequentially. It started at the beginning and it went to the end. And it divided it into two stages. The first stage was an arrest and preliminary hearing, and the second stage was the revocation hearing. The confrontation rights in b.2.c, the public interest balancing that needs to be done, under Morrissey that occurred at the preliminary hearing. Now, we obviously don't necessarily have that analog, but one thing is clear is that when the Supreme Court identified the rule that then became b.2.c, it was not talking about sentencing. But we're not construing Morrissey. And maybe the rules committee screwed up, or maybe the rules committee could have done something different, right? Based on Morrissey. To the extent this rule is just intended to codify Morrissey, fair enough. But we have to interpret the rule, not Morrissey. And I guess, just to candidly, there's some intuitive force to the government's argument about how this system should sensibly work, but I guess one of my bigger hesitations is that is a bizarre way to codify that. If the government's view that this same rule at some points refers to part of the hearing, but not other parts of the hearing and then we're jumping around, this part applies at the first part, this part applies at the second part, this part applies throughout, that is not the way that it strikes me that a hypothetical drafter who is drawing the distinction that the government wants to draw would have ever drafted rule 32.1. So, my observation, your honor, is that 32.1.b is actually written in chronological order. If you take away subsection b.2.d, which is the right to counsel, because that's not in Morrissey, all the other rights are in Morrissey, a through c and e. And if you look at the way those rules were pronounced in Morrissey, again, it was done under this hypothetical parole violation and it starts at the beginning and it goes to the end. So, wait, does the government think the right to counsel is a violation and sentencing right or just a violation right? And the government's view, when do I have a right to counsel at a revocation hearing? Sure, so that's why I said in the hypothetical, take out d because d is not in Morrissey. But I'm considering a rule that has d. That is fair, your honor. But if you, d would obviously apply at every stage of the proceeding, your honor, but generally a talks about notice of right, that's kind of what happens first. A trial happens second. That's what b.2.b and b.2.c are about. And then sentencing happens last and the last rule, the last subsection in the rule has the right to allocution. So that's the way I read that, your honor. And again, to your point about it being odd that confrontation rights, public interest balancing would happen at a revocation sentencing when you don't even do that at a regular criminal sentencing. The 10th circuit in Ruby found that a persuasive factor in deciding that b.2.c does not apply to sentencing. All of the existing sentencing law related to criminal prosecutions existed at the time of Morrissey. And there's nothing about Morrissey that said we're going to change sentencing law as it relates to violations of supervised release. In fact, Morrissey says this is not intended to have the formality and rules of a full blown criminal prosecution. And so the 10th circuit found it persuasive that if the understanding of sentencing law existed at the time of Morrissey and Morrissey didn't intend to change any sentencing law, then rule 32.1 didn't intend to change sentencing. But I mean, maybe the argument, putting aside the argument that the text of the rule just says what the text of the rule is, I mean, two other arguments on the other side that you're familiar with obviously are, you know, one, at the guilt phase and sentencing phase, there's a break of usually months between the finding of guilt or the acceptance of the guilty plea and the imposition of the sentence. Whereas your colleague on the other side says these revocation things, we don't have like a should I revoke your supervised release, then we'll have a PSR and come back in five weeks and decide how long. That's not what happens in this setting. So that's one difference. And I mean, sure, maybe this would say that you get somewhat more rights at revocation, but in another sense, you get a heck of a lot less, right? Because after I'm convicted, there's a PSR and I get the PSR and I have an option to object to the PSR. I mean, I have all kinds of procedural rights of criminal sentencing that even if the government is wrong here, I don't have at my revocation hearing. So why doesn't that address the apparent anomaly question? So I agree with the point that there are far less rights throughout a violation of supervised release. And even if I get this one, there are still far less rights. Correct. But again, I just don't see any intention in Morrissey or anything based on the text of the rule that was intended to make violation of supervised release sentencings more formal, more structured, have more due process protections than a traditional criminal sentencing. I do want to make one factual point that I regret not emphasizing more in the brief. And that is, Judge Bennett says at the beginning of the revocation hearing, for the record, Ms. Dancy called my chambers concerned to see if there was a detainer concerned about her safety. There is no law that says any disclosure of evidence must occur a day before, two days before, ten days before. He says it at the beginning of the sentence and he says it for the purpose of making a record. There's been some sense that who knows what occurred during this phone call. But the judge intended to make a record. There's no reason to believe that the judge intended to make a record at the beginning of sentencing but then just decided to omit some horrifying details that the victim disclosed. Well, but that can't be. I mean, I agree with you. The rule, this is a problem with the rule. The rule doesn't say when the disclosure has to happen. But, I mean, if I think about what the purpose of disclosure rules is to give people an opportunity to consider and react and possibly present counter, it strikes me as quite an aggressive swing to say that assuming there's a disclosure obligation, you can meet it by saying all right, let's get into it. Before we do, by the way, here's some bombshell evidence that you were never told about before the start of this hearing. That strikes me as a really, again, I understand you have the argument that B doesn't apply. But assuming that B applies, that strikes me as a very aggressive argument. Well, but one thing you might say is that counsel could have at that moment said, well, could we have an extension and could we resume the sentencing in two days so that I have an opportunity to consider and explore that evidence. Nobody did. I mean, that goes to the question of we are here on plain error and not any. And again, Your Honor, and to talk about a little bit of substantial rights and the cumulative nature of the evidence, this was not a bombshell. Ms. Dancy had been victimized for years. Her fear was known to everyone for years on the record. This was not a bombshell that was disclosed. I suspect if it was a bombshell, counsel would have piped up and said we need some more time to evaluate this. Well, do we even know what she said? I mean, I understand you said the district court said for the record I got a phone call. Do we even know what she told the district court judge? I can just take the judge for his word that he intended to make a record of what she did. He may have intended to make a record, but I mean this sincerely. I've read this transcript. Based on that transcript, I do not know what she told the district court judge. Beyond what the district court said? She called me and she was concerned, but that could mean a lot. I mean, I think we can agree that could mean a lot of different things. Well, Your Honor, let's take a look at the March letter, for example, that she sent. Was it going to be any worse than that when she expresses concern that she had a fear for her life? It could have been. Again, I don't know. I mean, I'm not saying I know this, but I mean she could have said he called me and is threatening to kill me. Based on what the district court said, I genuinely don't know what she told the district court. Yes, Your Honor, but understand that, for example, the underlying violation that he pled to arose out of Mr. Combs sending a text message to his now ex-wife with a picture of him holding a Glock saying, don't think I won't use this. Ms. Dancy's fear was well known to everybody. And Your Honor, I'll refer to a passage in Christman, which is a case that's cited by the appellant in this case. And again, this touches on the cumulative nature of the evidence. But it says, and Christman is quoting a prior opinion in Patrick, where the evidence upon which the sentencing court relies without previously notifying the defendant is of the same character, allows the same inferences, and most importantly, is subject to the same arguments in rebuttal as evidence in the record of which the defendant is already aware, it seems logical to conclude that advance notice would not give the defendant any additional incentive or ability to challenge the evidence. It's about the defendant's ability to respond to the allegations. The defendant's counsel prepared a sentencing memorandum and addressed the relationship with Ms. Dancy. I mean, if he had known about the phone call, what is the sentencing memorandum from the defense counsel going to say that's any different? He says, we don't know. Points well taken, there's a bunch of information that's known, but it's probably hard to make that argument without knowing what it is. It seems to me there's a response to that. I can't tell you what I would have put that's different until I know what it is in the first place. It seems to me the question is, looking at this record, is it likely or reasonably probable that the result would be any different? Your colleague talks about looking at this hearing and kind of compresses the amount of discussion. As I read the hearing, a lot of it is about the history and the cumulative effect that you're talking about. I think it's fair to look at the whole history along with exactly what he talks about in the last several pages. What's your response on that issue? I agree, Your Honor. This judge in particular always gives a very detailed procedural history at the start of every hearing, and a lot of the troubling facts and the troubling history by the defendant are baked in at the very beginning of the hearing. In fact, when I was given an opportunity to speak at sentencing, I said, much of what I would say you already covered in your extensive procedural history. The judge covered the defendant's mental health. He covered his criminal history. He covered the underlying conviction. He even went so far as to say that he read the underlying psychiatric evaluation of the defendant related to the underlying state charges. As for the sentence in particular, it's a bottom of the guideline sentence. In every case that's been cited by the court, it's a bottom of the guideline sentence. In Hayes, it was a top of the guideline sentence, and in fact, I believe the appellant said, well, it wasn't so much about the top of the guideline sentence. It was about that it was a significant sentence. The court in Hayes actually says, because this was a top of the guideline sentence, we find that this defendant's substantial rights were affected. In Ferguson, it was nine months above the sentencing guidelines. Should one other thing, as I was looking at this, the previous revocation hearings and the previous revocation sentences, where the district court does seem, and this maybe cuts both ways, the district court does seem to have a particular interest in what the witness who called says. He says he'd like to hear from her. He volunteers that before. So on the one hand, that makes me think, well, they have something here. He seems to have maybe an oversized interest in this particular thing. But the flip side of that is, even in the earlier proceedings where he expresses that interest, and when there's letters, his revocation sentences are pretty light. It extends it by a month or two. If you could just comment, it seems to me that cuts a little bit both ways. But on balance, even with that, he's not giving the most severe sentences in the revocation context. So one thing is clear, Your Honor, is that the revocation sentences grow each time. The second one is greater than the first, and the third one is greater than the second. And I believe the district court frequently makes comments about the court's patience running thin. And I've paid close attention to this. And so, although the prior sentences were much lighter, as you indicated, the judge appeared to be very invested in this case, very invested in the victim, very invested in the history. And so I think it's relatively normal that the sentence would grow at each stage. And even still, to your point about the sentences being relatively light, this is the bottom of the guideline sentence. But the flip side, I guess, or a related thing to that, isn't it, that the judge's, I agree, seemingly unusual level of interest in hearing from one particular victim, seems to, in explaining the decision to go easy on him, some of the earlier time says, you've got this person in your life, this person's a positive influence in your life, and I'm going to do that. I mean, this is a really aggressive interpretation, but one interpretation is, as long as you're with her, and as long as she's good with you, I'm inclined to be charitable. And the moment your relationship with her is completely broken down, I'm throwing the book at you. I know you're going to say it's the bottom of the guideline, but compared to what the district court had done to him previously, this is clearly, this is sort of throwing the book at him. So, I would just add that the judges, the district court made frequent comment about the defendant's mental health and his mental health issues. And I don't think that his mental health is confined to his relationship with his ex-wife. Certainly the defendant argued at sentencing, well, now that this relationship is over, you don't have to worry about this anymore. But the defendant had significant mental health issues, substance abuse issues. There was no indication that they abated while he was not in prison. And so, I certainly see that a lot of this stemmed from the relationship with Ms. Nancy, but at the same time, he even admitted himself he did not have his mental health issues under control. He said that at the third revocation hearing, and the judge said, I appreciate your candor. So, again, I think sentences increased. It was the third again, as the district court said, not one, not two, but three. You made the point that I would make that it wasn't necessarily the book. It was the bottom of the guideline sentence. Regardless of whether this is or is not permitted by the rule in the government's view, could you, do you have the ability to make any sort of representation? Is it common to not notify defendants at revocation hearings before the hearing of things the court is going to be considering in revoking the sentence? As a descriptive matter, is this common or uncommon? I am not aware of any established practice in our district of any memorandum that's issued prior to a revocation sentencing that would say, you know, these are the following issues for the court. This is the evidence for the court that the court intends to rely upon. No, I'm not aware of any kind of standard for that. I mean, again, in a traditional sentencing, you have the PSR in Rule 32, and that creates that framework. And again, Your Honor, I will just conclude with that the appellant in this case is seeking to impose a level of formality and structure and process on a revocation sentencing. Revocations are supposed to be less formal than criminal prosecution. Sentencings are supposed to be less formal than trials. And we are really kind of turning that established standard on its head where, for example, a district court is now going to have to perform a public interest balancing and confrontation analysis every time a victim sends an impact statement to the court, even where that victim impact statement is disclosed. Thank you, Your Honor. I think you have a little time left for rebuttal. Thank you, Your Honor. I'd like to just start by addressing this question of the cumulativeness of the phone calls. If you look at Ms. Dancy's letter, at the end of the letter she says, quote, there is so much more I can tell you and show you if you need proof. So even in March 2020, Ms. Dancy has not given the court all the information that exists at that time. And then between then and the revocation hearing in February of 2021, we have 11 months to pass. So a lot can happen in 11 months. And the government just asked the court to assume that the new details from the letter and the 11 months, nothing new happened. And the Sixth Circuit in Hays rejected that argument. The government made the same argument. You should just assume it's cumulative. That's fair, I guess, but you're in effect asking us to assume there's some incredible amount of information beyond already bad information. I guess in a situation where we don't know what's heard, each side can say whatever, but there's a bunch of severe information spanning multiple years. I guess your argument is true, but in a context where it's unknown, we should assume the worst. I don't think the court has to assume the worst, but I think the way this court can tell what a district court attaches importance to is by looking at what the district court said. And at the sentencing, the court mentioned the calls twice. It did not mention the March 2020 letter. It did not mention the assault in the Ocean City incident. None of that came up. Well, it may be it depends on how you look at the hearing. I kind of went to my question to you earlier and to your colleague. I don't know that it's completely fair to just say reciting the procedural history is kind of formalistic procedural history. It seems like the history here is part of the information that the district court's considering, the cumulative effect of everything. So when he does that and then turns to the sentencing, it's a little bit myopic just to focus there and not look at the other aspects of the hearing. You give any credence to that? I take your point, Your Honor, but I guess the point I make is yes, the court did recite the procedural history, including the fact that there had been previous revocations, but it did not specifically say anything about the Ocean City incident or the March 2020 letter or anything like that. Yes, it was all in the background. Certainly, and we can assume the court was aware of it, but it didn't mention it specifically the way it did these phone calls. But isn't it fair to say the phone calls might be more vivid, if you will, and more different than other evidence that the district court ordinarily considers, and so even if they didn't make I think you just have a very hard argument that things would have been different without this. And we are here on plain error, right? There was no objection. I just looked, and you weren't the lawyer at the time. I bet there would have been an objection. I wish there had been an objection, but there wasn't. Yes, we're here on plain error. Again, I think a couple points. One is again, whatever Ms. Dancy told the court, it prompted the court to do something really rather extraordinary, which is to re-judge the marshal service on her behalf and relay information back to her. That is, I mean, I hope at least that that is extremely unusual. I don't think the court can just assume that that didn't that indicates that this didn't make a difference to the court. If I could, I'd like to just make one quick point about the plainness of the error, and that is that 32.1b2c, which contains the right to cross-examination, also gives the releasee the right to appear and to present evidence. So if the government is right that subsection b2c does not apply at sentencing phase, then that would mean that the releasee has no right to appear at the sentencing phase or to present evidence at the sentencing phase. And that just cannot be right. That cannot be what the drafters of the rule intended. That makes no sense whatsoever. And I think I'm over my time, so unless you have more questions, I will leave it there. Thank you very much. We appreciate both of your arguments. We're sorry we can't come down and shake hands, but you started off the day very well. We appreciate your arguments. Thank you.
judges: Diana Gribbon Motz, A. Marvin Quattlebaum Jr., Toby J. Heytens